In the

# United States Court of Appeals

### For the Seventh Circuit

No. 25-1327

INSURANCE COMPANY OF THE WEST,

*Plaintiff/Counter Defendant-Appellee*,

*v.*

HIGH PERFORMANCE ALLOYS, INC.,

*Defendant/Counter Claimant-Appellant.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:23-cv-01875 — **Sarah Evans Barker**, *Judge*.

ARGUED FEBRUARY 25, 2026 — DECIDED AUGUST 4, 2026

Before KIRSCH, JACKSON-AKIWUMI, and PRYOR, *Circuit Judges*.

JACKSON-AKIWUMI, *Circuit Judge*. Insurance Company of the West (ICW) issued a Worker's Compensation and Employers' Liability Insurance Policy (Policy) to High Performance Alloys, Inc. (HPA). The Employers' Liability portion of the Policy applied to "bodily injury by accident" and excluded coverage for obligations imposed by worker's compensation law and bodily injury that HPA "intentionally caused or aggravated." During the period the Policy was

active, an HPA employee, Elliott Sullivan, was killed while working at HPA's facility.

Sullivan's estate filed a wrongful death suit alleging that HPA failed to adhere to industry codes or correct several dangers which ultimately caused Sullivan's death. Specifically, the estate's complaint alleges HPA (1) knew the process that led to Sullivan's death was dangerous; (2) failed to implement available safety measures or otherwise protect Sullivan against unnecessary risks; and (3) had "actual intent" to cause injury to Sullivan. ICW denied coverage and sought declaratory relief stating that it does not have a duty to defend HPA against the claim. The district court granted ICW's request for two reasons: first, because the estate's allegations fall under Indiana's worker's compensation laws, and second, because the allegations fall within the Policy's intentional acts exclusion. We agree on both counts and affirm.

**I**

ICW issued a Worker's Compensation and Employers' Liability Insurance Policy to HPA with an effective period of October 1, 2021 to October 1, 2022. Subject to certain terms, definitions, and exclusions, Part Two of the Policy applies to bodily injury (including death) caused by an accident. In relevant part, Sections A, B, and C of Part Two of the Policy provide:

### A. How This Insurance Applies

This employers liability insurance applies to bodily injury by accident or bodily injury by disease. . . .

### B. We Will Pay

We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance. . . .

### C. Exclusions

This insurance does not cover:

\*\*\*

4. Any obligation imposed by a workers compensation, occupational disease,

unemployment compensation, or disability benefits law, or any similar law;

5. Bodily injury intentionally caused or aggravated by you;

During the coverage period, Sullivan was fatally injured while working at HPA's facility. His wife filed a wrongful death lawsuit in state court. (*Sullivan* Lawsuit). *See Sullivan v. High Performance Alloys, Inc.*, Case No. 80C01-2308-CT-001072 (Ind. Cir. Ct.). The complaint in that lawsuit states a claim under the subject header "Gross Negligence as to HPA," alleging:

74. That, upon information and belief, Defendant HPA acted with gross negligence and in

a willful and wanton manner, without regard to the safety of others.

75. That prior to Sullivan's death, HPA received a serious violation from the Indiana Occupational and Safety Health Administration for having ineffectively guarded equipment which exposed employees to potentially be struck-by and caught-in hazards.

76. That Defendant HPA had actual knowledge that its employees were in danger of being struck-by and caught-in hazards due to Defendant HPA's failure to properly safeguard the employees from the machinery using protective shields.

77. That, upon information and belief, Defendant HPA knew or should have known that the Erie Forge Press was dangerous and failed to correct its dangerous condition.

78. That, upon information and belief, Defendant HPA had actual knowledge of a Lake Erie software and/or system update that allowed 750 Ton Press operators the ability of precision during the calibration and measuring process without the need for shims or hard-stops.

79. That, upon information and belief, despite this actual knowledge, Defendant HPA failed to install this update and continued to force employees to use the hard stops and/or shims, knowingly placing

> employees in danger while the machine was in operation.
>
> 80. That based on this conduct, Defendant HPA acted with actual intent to cause injury to Sullivan.
>
> 81. That, as a direct and proximate of the grossly negligent, and careless acts and omissions of HPA Sullivan lost his life, entitling Plaintiffs to recover damages.

At some time during the state-court litigation, which remains pending, HPA sought coverage under the Policy for the *Sullivan* Lawsuit. ICW disclaimed any coverage obligation on the basis that Sullivan's injuries did not result from an accident. ICW later sought a declaratory judgment in federal court stating that it has no duty to defend or indemnify HPA in the *Sullivan* Lawsuit. HPA filed a counterclaim in the federal lawsuit seeking a declaration that ICW had a duty to defend. ICW moved for judgment on the pleadings and HPA moved for summary judgment.

The district court ruled in ICW's favor, finding it had no duty to defend HPA. The court interpreted the question before it as "whether the *Sullivan* Lawsuit alleges facts that, if proved true, could result in coverage under the Employers Liability Insurance part of the Policy." The district court held that the Policy's worker's compensation exclusion "unambiguously bar[red] coverage" for the only claim brought against HPA. According to the court, if all the facts in the underlying complaint were assumed to be true, the estate would have recourse only under Indiana's Worker's Compensation Act (Act), Ind. Code § 22-3-2-1 *et seq*. The court was unpersuaded

by HPA's argument that coverage applied because the estate sought relief beyond worker's compensation. The court therefore held that coverage was precluded as a matter of law under the Act. The court also stated in a footnote that:

> To the extent the allegations in the Sullivan Lawsuit could be read to allege an intentional tort not governed by worker's compensation exclusivity, the Policy's intentional harm exclusion would preclude coverage for any such claim. This case therefore turns on the applicability of the worker's compensation exclusion and we do not discuss the intentional harm exclusion further.

HPA now appeals.

## II

We review the court's ruling on ICW's motion for judgment on the pleadings de novo, construing the facts in the light most favorable to HPA. *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020); Fed. R. Civ. P. 12(d). When sitting in diversity, we attempt to resolve questions of state law "in the same way (as nearly as we can tell) as the state's highest court would." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1000 (7th Cir. 2018).

### A. Workers' Compensation Act Exclusivity

HPA argues that the allegations in the *Sullivan* Lawsuit plead an intentional tort, and intentional torts fall outside of the Act. HPA points to the facts in the *Sullivan* complaint about prior incidents at HPA, the availability of feasible safety measures, and HPA's disregard of known dangers. According to HPA, these facts allege that HPA acted with actual

knowledge that serious injury or death was "substantially certain" to occur. In HPA's view, conduct that is a "substantial certainty" is not the sort of conduct the Act covers.

HPA's view is belied by the Act and Indiana caselaw. Indiana courts regard the Act as "the exclusive remedy for an employee who sustains injuries by accident which arise out of and in the course of employment." *Nishikawa Standard Co. v. Van Phan*, 703 N.E.2d 1058, 1059 (Ind. Ct. App. 1998). This makes sense because the Act's exclusivity section provides that the rights and remedies granted under the Act:

> on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, the employee's personal representatives, dependents or next of kin, at common law or otherwise, on account of such injury or death.

Ind. Code § 22-3-2-6. And to the extent more clarity about the Act's reach is necessary, we need look no further than the Indiana Supreme Court's decision in *Baker v. Westinghouse*, 637 N.E.2d 1271 (Ind. 1994).

In *Baker*, an Indiana federal court asked the Indiana Supreme Court to determine "[w]hether there is an intentional tort exception to the exclusivity provision of the Indiana Worker's Compensation Act." *Id.* at 1272. The Indiana Supreme Court held that intentional torts are not categorically barred by the statute simply because they occur at work. *Id.* The court interpreted the exclusivity provision as "expressly limited to personal injury or death arising out of and in the course of employment which occurs 'by accident.'" *Id.* at 1273. The court announced that because an injury occurs "'by

accident' only when it is intended by neither the employee nor the employer, the intentional torts of an employer are necessarily beyond the pale of the act." *Id*.

The court also provided the standard to determine whether an employer acted intentionally. *Id*. at 1274–75. In doing so, the court expressly noted that mere negligence or recklessness, regardless of the result, does not convert an employer's conduct into an intentional tort under Indiana law. *Id*. at 1275. As the court put it, "[t]he employer that acts in the belief that it is causing an appreciable risk of harm to another may be negligent, and if the risk is great its conduct may be characterized as reckless or wanton, but it is not an intentional wrong." *Id*. According to the court, "[n]othing short of deliberate intent to inflict an injury, or actual knowledge that an injury is certain to occur, will suffice" to avoid the Act's exclusivity. *Id*.

In its briefs, HPA cites *Baker* and acknowledges that "any claim other than a deliberate intent to inflict an injury or actual knowledge that an injury is certain to occur is excluded from the exclusive remedy of the Act." Nevertheless, HPA argues that the underlying claim falls outside of the Act's coverage because the *Sullivan* complaint alleges that HPA was substantially certain that injury would result from its failures. *Id*. But, as HPA concedes, the *Sullivan* complaint never uses the phrase "substantially certain" or any variation thereof. *Id*. at 5. And, even if it did, allegations about substantial certainty would not allege intent under Indiana law. *See Baker*, 637 N.E. 2d at 1272–74. In other words, contrary to HPA's assertions, allegations that HPA knew of dangerous conditions, prior incidents, or regulatory violations do not establish that it had

actual knowledge that injury was inevitable rather than merely foreseeable. *Id*.

*Baker* makes clear that an employer acts intentionally only if it deliberately intends to cause an injury or has "actual knowledge" that an injury will certainly occur. *Id.* at 1275. Even if we accept the *Sullivan* allegations as true, the facts show only that HPA was aware that its shortcomings did not comply with industry code, could have been improved, and risked harm to its employees. *See* supra at 3–4. The facts do not allege "actual knowledge" that Sullivan would be injured. That distinction dooms HPA's position. *See Summers v. Crossroads Galvanizing, LLC*, No. 4:21-CV-074-PPS-JEM, 2023 WL 7109695, at *6 (N.D. Ind. Oct. 27, 2023) (collecting and summarizing Indiana cases applying *Baker*). Because the *Sullivan* complaint does not allege that HPA intended to cause Sullivan's injury or had actual knowledge his injury would occur, the conduct at issue is covered under the Act.

### B. Intentional Acts Exclusion

In an attempt to remove the *Sullivan* Lawsuit from the Act's reach but keep it within the Policy's coverage, HPA directs our attention away from the Policy's exclusion of claims for "bodily injury" that it "intentionally caused or aggravated." HPA argues that the *Sullivan* Lawsuit does not fall within that exclusion because HPA did not intend to cause Sullivan's death. HPA adopts this position all while emphasizing that the *Sullivan* complaint alleges that HPA acted with "substantial certainty" and caused Sullivan's death, as discussed above. According to HPA, substantial certainty that an injury may result is not intent sufficient to bar coverage.

Even assuming that substantial certainty falls short of intent, it would not help HPA because we disagree that the *Sullivan* complaint alleges HPA acted with substantial certainty that Sullivan's death would occur. And, even if the complaint did allege this, Sullivan's death would be deemed accidental under Indiana law regardless.

According to the Indiana Supreme Court, "implicit in the meaning of 'accident' is the lack of intentionality." *Auto-Owners Ins. Co. v. Harvey*, 842 N.E.2d 1279, 1283 (Ind. 2006). More specifically, "in the context of insurance coverage, an accident means an unexpected happening without an intention or design." *Id*. (citation modified). As discussed above, *supra* at 7–8, most of the *Sullivan* complaint's allegations plead an unintentional tort that HPA knew could occur. As such, even when the facts are construed in HPA's favor, they do not place the *Sullivan* complaint outside of the Act's coverage.

The sole exception in the *Sullivan* complaint is an allegation that "HPA acted with actual intent to cause injury to Sullivan." But that allegation also falls short of Policy coverage no matter how we view it. If we accept that allegation as true, we must necessarily reject the notion that the injury was unexpected or accidental. That would foreclose relief for HPA because the Policy only "applies to bodily injury by accident." On the other hand, if we reject that allegation as a legal conclusion, we are left with the other allegations, discussed earlier, which accuse HPA of recklessness and wanton negligence at best.

This reveals the tension in HPA's position. If HPA intended to cause Sullivan's death, coverage would be barred under the Policy's exclusion for intentional acts and because

his death was not accidental. By contrast, if HPA did not intend to cause Sullivan's death or did not have actual knowledge it would occur, coverage would be barred under the Policy because Sullivan's death was an accident covered under Indiana's Workers' Compensation Act. *Baker*, 637 N.E. 2d at 1275. That is true even if Sullivan's death resulted from HPA's gross negligence or wanton recklessness. *Id*. Either way, ICW does not have a duty to defend HPA.

## C. Certification

HPA urges us to ask the Indiana Supreme Court to clarify whether insurers have a duty to defend and indemnify certain types of intentional torts. According to HPA, certification is necessary because Indiana precedent does not clearly resolve whether allegations of substantial certainty avoid workers' compensation exclusivity and trigger intentional injury exclusions in insurance policies. We disagree that certification is necessary to resolve this case.

Before certifying a question to a state's highest court, we must be satisfied that the case requires "the promulgation of new law" and not simply "the exercise of a court's judgment." *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 672 (7th Cir. 2001). We adhere to this requirement so that we do not "overburden" the state courts. *Id*. This case does not meet that standard. Indeed, we have said that certification is appropriate only where (1) the case concerns a matter of vital public concern; (2) the issue will likely recur in other cases; (3) resolution of the question to be certified is outcome determinative; and (4) the state supreme court has not yet illuminated a clear path on the issue. *Id*.

None of those factors are met here. A workplace tragedy led to this litigation, to be sure, but this case is a dispute between two private corporations, not a matter of vital public concern. And the issues presented here are unlikely to recur with regularity. Furthermore, because we can decide this case based on the Act's exclusivity, the question HPA asks us to certify would not be outcome determinative. Finally, over thirty years ago in *Baker*, Indiana's highest court announced that the Act does not have an implicit exclusion for intentional acts because, by its terms, the Act only covers workplace injuries that occur by accident. *Baker*, 637 N.E.2d at 1273. *Baker* provides us with sufficient guidance to decide this case. We therefore deny HPA's request for certification.

### III

In sum, the *Sullivan* complaint alleges that HPA knew of certain dangers, failed to mitigate or eliminate those dangers despite ample opportunity, and continued to expose its employees to unnecessary danger which ultimately caused Sullivan's death. The complaint also alleges that HPA had actual intent to cause Sullivan's death. These allegations plead either an accidental injury covered by the Act, an intentional injury that falls outside of the Act and the Policy, or both. Regardless, ICW does not have a duty to defend HPA. The court's judgment is AFFIRMED.